| | |
|---|---|
| JOHN A. KING and | ) |
| CATHY D. KING, Individually, | ) |
| and, JOHN A. KING and CATHY D. KING, | ) |
| as parents and next friends of | ) |
| C. S. K., a minor, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| vs. | )   Case No. _____ |
| | ) |
| BOMBARDIER RECREATIONAL | ) |
| PRODUCTS, INC., d/b/a BRP, | ) |
| | ) |
| and | ) |
| | ) |
| BOMBARDIER CORPORATION, | ) |
| | ) |
|     Defendants. | ) |

## COMPLAINT

Comes now, John A. King, individually, Cathy D. King, individually, and John A. King and Cathy D. King as parents and next friends of C.S.K., a minor, ("Plaintiffs"), and files this Complaint against Bombardier Recreational Products, Inc., d/b/a BRP and Bombardier Corporation (collectively "Bombardier" or "Defendants" or "Defendant Bombardier"), and for their cause of action would respectfully show unto the Court the following:

## Introduction

This is a products liability action arising from the injuries and damages suffered by C.S.K., minor daughter of Cathy D. King and John A. King, when she fell off the rear of a Sea-

Doo watercraft (manufactured and distributed by Bombardier) while riding as a passenger on the watercraft on Boone Lake in Sullivan County, Tennessee. The minor, C.S.K, slipped of the rear of the watercraft and fell into the jet stream of water thrusting out of the rear of the vehicle. The high-pressure stream of water striking the minor Plaintiff caused severe, painful, and mutilating physical injuries, emotional distress and suffering, and permanent physical disfigurement, all of which was the direct result of the negligent and defective design, testing, manufacture, distribution and failure to warn of the Sea-Doo watercraft by the Defendants.

## I. JURISDICTION AND PARTIES

1.      This Court has jurisdiction in this action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332, in that the amount of controversy exceeds the sum of Seventy-five Thousand and No/100 Dollars ($75,000.00) exclusive of interest and costs, and the parties are citizens of different states.

2.      Plaintiffs John A. King, Cathy D. King and their minor daughter, C.S.K., are all citizens and residents of the State of Tennessee residing at 673 Sugar Hollow Road, Piney Flats, TN 37686.

3.      Venue is proper in the Eastern District of Tennessee pursuant to 28 U.S.C. § 1391, in that the incident in question occurred in Sullivan County, Tennessee.

4.      Defendant, Bombardier Recreational Products, Inc., d/b/a BRP, is a Canadian corporation engaged in the manufacturing and distribution of recreational motorized vehicles for sale

to the general public in the United States and the State of Tennessee. Defendant Bombardier manufactures watercraft and sport boats under the registered trade name Sea-Doo, as well as other vehicles and accessories for land, water, snow and air recreation and utility. Defendant Bombardier manufactured the Sea-Doo watercraft which caused the injuries as complained of herein. Defendant Bombardier may be served with process by serving its president, Jose Boisjoli, at 726 St. Joseph Street, Valcourt, Quebec, Canada, JOE 2LO.

5.      The Defendant Bombardier Corporation is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 787 Seventh Avenue, New York, NY 10019. Upon information and belief, Defendant Bombardier Corporation is the American supplier of the Defendant Bombardier Recreational Products, Inc. d/b/a BRP and conducts substantial business with the State of Tennessee by engaging in the business of selling watercraft to the public. Defendant Bombardier Corporation may be served with process through C T Corporation System, 111 Eighth Avenue, New York, NY 10011.

## II. BASIC PREMISE

6.      This is a products liability cause of action for personal injury that arises from the manufacturing, construction, design, testing, warning, instruction, marketing, or labeling defects of the 2008 Sea-Doo GTX Wake watercraft, designed, tested, manufactured, distributed, and marketed by the Defendant Bombardier Recreational Products, Inc., d/b/a BRP and Defendant Bombardier Corporation.

7.     At all times mentioned herein, the Defendant Bombardier engaged in the business of designing, testing, manufacturing, distributing, and marketing Sea-Doo watercraft to the general public throughout the United States including the State of Tennessee.

8.     At all times mentioned herein, the Defendant Bombardier engaged in the business of marketing and distributing in interstate commerce various types of watercraft including the Sea-Doo watercraft at issue.

9.     Bombardier designed, tested, manufactured, distributed, marketed, and placed into the stream of commerce the 2008 Sea-Doo GTW Wake watercraft, which reached the owner of the watercraft in the same or substantially the same condition in which it was sold.

10.     At the time of sale, the product in question was represented to be safe and free from latent defects.

11.     The 2008 Sea-Doo watercraft at issue was negligently and defectively designed, tested, and manufactured by the Defendant Bombardier and then marketed as a safe product.

12.     The design, testing, and manufacturing defects caused said watercraft vehicle to be inherently dangerous as designed, manufactured, and distributed.

13.     The Sea-Doo watercraft in question was defective and unreasonably dangerous at the time it left the hands of the Defendants.

14.     The vehicle reached the owners of said watercraft in the same or substantially the same condition in which it left Defendants' control.

15.     The Defendant Bombardier knew, or reasonably should have known, of the defective and unreasonably dangerous design and/or defective condition of the Sea-Doo watercraft at issue but failed to adequately warn and/or recall the product.

## III. FACTS

16.     On or about June 16, 2009, C.S.K., minor daughter of the Plaintiffs John A. King and Cathy D. King, was riding as a guest passenger on a 2008 Sea-Doo GTX Wake watercraft, Serial No. YDV20472A808, on Boone Lake in Sullivan County, Tennessee. The Sea-Doo watercraft was owned by Brett and Jennie Hodge, and was being operated by the Hodge's minor son, B.H. The minor, C.S.K., was seated on the rear of the vehicle, while another minor, D.W., was seated between C.S.K. and the operator, B.H.

17.     While the minor, C.S.K., rode as a passenger, the minor, B.H., operated the Sea-Doo watercraft, maneuvering the vehicle about the lake.

18.     At one point while B.H. was operating the watercraft with the other two minors as passengers, he accelerated the watercraft. When the watercraft accelerated, the minor, C.S.K., lost her grip and slipped off the rear of the vehicle.

19.     When C.S.K. slipped off the Sea-Doo watercraft and into the water, she fell directly into the high-pressure jet stream of water being thrust out of the rear of the watercraft by the jet pump propulsion system.  The high-pressure jet stream of water penetrated the minor's bodily orifices causing severe, painful, and mutilating injuries which required emergency medical treatment, surgery, and prolonged and extensive medical care.  The injuries suffered by the minor, C.S.K., caused excruciating pain and on-going physical discomfort, and will, upon information and belief, continue to cause health related problems for the remainder of her life.

## IV. GENERAL NEGLIGENCE IN DESIGN, MANUFACTURE, AND MARKETING

20.     The allegations contained in the previous paragraphs are incorporated herein by reference and realleged as if set forth verbatim.

21.     The Defendant Bombardier knew or should have known that the subject Sea-Doo watercraft would be placed in the stream of interstate commerce when the Defendant Bombardier manufactured, marketed and distributed the watercraft to retailers throughout the United States of America.

22.     The Defendant Bombardier owed a duty of ordinary care to the consuming public, including the Plaintiffs, to distribute into the stream of interstate commerce a product (watercraft) which was designed and manufactured in a way that was reasonably fit for its intended purpose and foreseeable uses.

23. The Defendant Bombardier owed a duty of ordinary care to the consuming public, including the Plaintiffs, to design, manufacture, distribute, market, sell and place into the stream of commerce a product, including the Sea-Doo watercraft at issue, that was not unreasonably dangerous or defective.

24. The Defendant Bombardier breached the duty owed to the consuming public, including the Plaintiffs, to reasonably design, manufacture, assemble, distribute, market, test, and inspect the 2008 Sea-Doo GTX Wake watercraft and allowed the vehicle to be distributed in a defective condition, unreasonably dangerous to the consumer public, including the minor, C.S.K., who was injured in the incident at issue.

25. The Defendant Bombardier breached the duty owed to the consuming public, including the Plaintiffs, to reasonably design, manufacture, assemble, distribute, market, test, inspect, and sell the 2008 Sea-Doo GTX Wake watercraft and allowed vehicle to be distributed in a condition not fit for its intended purpose and foreseeable uses.

26. At all times complained of herein, the Defendant Bombardier owed a duty of reasonable care to the consuming public, including all foreseeable users of the product such as the Plaintiffs. Defendant Bombardier breached its duties and was negligent as follows:

a. Negligently designing the 2008 Sea-Doo watercraft at issue;

b. Negligently marketing the 2008 Sea-Doo watercraft at issue;

c.      Negligently testing the 2008 Sea-Doo watercraft at issue;

d.      Negligently failing to properly design and manufacture the jet pump propulsion system of the watercraft to provide reasonable protection and safety to the operator and/or passengers of the watercraft;

e.      Negligently manufacturing, marketing, distributing, and delivering the watercraft with a jet pump assembly and/or propulsion system that the Defendant knew or should have known was unreasonably dangerous and would cause significant and catastrophic injuries to the operator and/or passengers of the watercraft;

f.      Negligently manufacturing, marketing, distributing, and delivering the watercraft without providing an adequate, necessary and reasonable jet pump propulsion system and/or assembly that would protect the operator and/or passengers during foreseeable use of the watercraft;

g.      Negligently failing to provide reasonable and adequate warnings of the foreseeable danger of injury posed by the jet propulsion system assembly of the watercraft;

h.      Negligently failing to design, install or provide any type of passenger seat with a proper backrest or support to aid passengers in maintaining their position on the watercraft;

i.      Negligently failing to design, install or provide any type of hand-holds or passenger restraint devices to aid passengers in maintaining their position on the watercraft;

j.      Negligently failing to design, install or provide any type of safety kill switch for passengers on the watercraft that would stop the jet pump if the passenger fell from the watercraft

k.   Negligently failing to provide adequate warning of the danger posed to persons who fall into the high-pressure jet stream of water emanating from the watercraft;

l.   Negligently failing to recall and make modifications to the watercraft after the Defendant knew, or should have known, of the defective and dangerous design or feature of the watercraft; and

m.   Negligently failing to comply with applicable law requiring that consumers be notified of defects in vehicles such as the 2008 Sea-Doo watercraft at issue.

27.   The Defendant Bombardier knew or should have known that the 2008 Sea-Doo watercraft at issue was negligently designed, tested, manufactured, marketed, and distributed and that the watercraft was in a defective condition and unreasonably dangerous due to the high-pressure stream of water that thrust out of the rear of the watercraft in close proximity to the occupants of the watercraft, thus posing a danger should an occupant fall or be ejected from the watercraft.

28.   The Defendant Bombardier knew or should have known that the 2008 Sea-Doo watercraft at issue was negligently designed, tested, manufactured, marketed, and distributed and that the watercraft was in a defective condition and unreasonably dangerous due to a lack of any type of hand-holds, supports, or passenger restraint devices that would lessen or eliminate the risk of passengers falling from the watercraft and into the high-pressure stream of water that thrust out of the rear of the watercraft.

29.   The Defendant Bombardier knew or should have known that the watercraft was

in a defective condition and unreasonably dangerous at the time the vehicle left the manufacturing facility.

30.     As a result of the negligence of the Defendant Bombardier, the watercraft posed an unreasonable risk to operators or passengers should such a person fall or be ejected from the watercraft, with such occurrences being foreseeable due to the design of the watercraft and its intended and foreseeable use.

31.     The Defendant Bombardier breached the duty owed to the minor, C.S.K., and the adult Plaintiffs as members of the consumer public by placing a defective product in an unreasonably dangerous condition into the stream of interstate commerce, actually and proximately causing the injuries suffered by C.S.K., and the other damages complained of herein.

32.     Through the exercise of due diligence and proper inspection or testing, the Defendant Bombardier would have known that the watercraft had a design defect or defects rendering it unreasonably dangerous.

33.     The Defendant Bombardier knew or ought to have known, in light of the defects complained of herein, that its conduct would naturally or probably result in injury, and the Defendant continued such conduct with malice or in reckless disregard of the consequences, from which malice may be inferred and for which punitive damages should be awarded.

## V. FAILURE TO WARN (JET PROPULSION SYSTEM/ASSEMBLY)

34.     The allegations contained in the previous paragraphs are incorporated herein by reference and realleged as if set forth verbatim.

35.     The Defendant Bombardier owed a duty to the minor, C.S.K., and the adult Plaintiffs as members of the consumer public, to adequately warn of the dangers of the defective nature of the 2008 Sea-Doo watercraft at issue, and specifically the danger posed by the high-pressure jet stream of water thrust out of the rear of the watercraft by the jet propulsion system, as upon information and belief the Plaintiffs submit that Bombardier had actual knowledge prior to this incident, of prior incidents of the same nature causing severe injuries to other persons.

36.     The Defendant Bombardier knew or should have known that the 2008 Sea-Doo watercraft at issue posed a danger to persons who might fall or be ejected from the watercraft and into the high-pressure jet stream of water, which was a foreseeable occurrence.

37.     The Defendant Bombardier knew or should have known that the 2008 Sea-Doo watercraft at issue had insufficient hand-holds, supports or passenger restraint devices and thus created or exacerbated the risk and/or danger of persons falling from the watercraft and into the high-pressure jet stream of water coming from the rear of the watercraft.

38.     The Defendant Bombardier knew or should have known, but failed to warn members of the consumer public, such as the minor, C.S.K., and the adult Plaintiffs, of the defective and unreasonably dangerous conditions as stated herein.

39.     Failure of the Defendant Bombardier to warn the consumer public of such defects made the watercraft at issue unreasonably dangerous.

40.     As a direct result of the failure of the Defendant Bombardier to warn the general consuming public, and the minor, C.S.K. in particular, the minor, C.S.K., have suffered severe, painful, and mutilating injuries, and will continue to suffer in the future, for which the Plaintiffs are entitled to receive damages.

41.     The Defendant Bombardier knew or ought to have known, in light of the surrounding circumstances, that its failure to warn would naturally or probably result in injury, as upon information and belief the Plaintiffs submit that Bombardier had actual knowledge prior to this incident, of prior incidents of the same nature causing severe injuries to other persons, and the said Defendant continued such conduct with malice or in reckless disregard of the consequences, from which malice may be inferred and for which punitive damages should be awarded.

42.     The failure of the Defendant Bombardier to warn was wilful, wanton, and

reckless, for which the Plaintiffs are entitled to be compensated for the injuries complained of herein, and for which punitive damages should be awarded.

## VI. FAILURE TO WARN (OPERATION BY MINORS)

43. The allegations contained in the previous paragraphs are incorporated herein by reference and realleged as if set forth verbatim.

44. The Defendant Bombardier owed a duty to the minor, C.S.K., and the adult Plaintiffs as members of the consumer public, to adequately warn of the dangers posed by the high-pressure jet stream of water created by the jet propulsion system of the watercraft, and of the danger of operation of the dangerous instrumentality (watercraft) by minors who were more likely to lack the strength, ability, skill, training, experience, and judgment necessary to properly and safely operate the 2008 Sea-Doo watercraft at issue.

45. The Defendant Bombardier knew or should have known that operation by minors of the 2008 Sea-Doo watercraft at issue posed a particular danger, in light of the size and handling characteristics of the vehicle, the foreseeable uses of the vehicle, and the danger posed by the high-pressure jet stream of water emanating from the rear of the vehicle.

46. The Defendant Bombardier knew or should have known that operation by minors of the 2008 Sea-Doo watercraft at issue exacerbated the risk and/or danger of persons falling from the watercraft and into the high-pressure jet stream of water coming from the rear of the watercraft.

47. The Defendant Bombardier knew or should have known, but failed to warn members of the consumer public, such as the minor, C.S.K., and the adult Plaintiffs, of the danger posed by operation of the watercraft by minors, in light of the defective and/or dangerous design or nature of the watercraft as stated herein.

48. Failure of the Defendant Bombardier to warn the consumer public of such danger and such defects made the watercraft at issue unreasonably dangerous.

49. As a direct result of the failure of the Defendant Bombardier to warn the general consuming public, and the minor, C.S.K. in particular, of the danger posed by operation of the watercraft by a minor, C.S.K. suffered severe, painful, and mutilating injuries, and will continue to suffer in the future, for which the Plaintiffs are entitled to receive damages.

50. The Defendant Bombardier knew or should have known, in the light of the surrounding circumstances, that its failure to warn of this danger would naturally or probably result in injury, and the said Defendant continued such conduct with malice or in reckless disregard of the consequences, from which malice may be inferred and for which punitive damages should be awarded.

51.     The failure of the Defendant Bombardier to warn of this danger was wilful, wanton, and reckless, for which the Plaintiffs are entitled to be compensated for the injuries complained of herein, and for which punitive damages should be awarded.

## VII. STRICT LIABILITY

52.     The allegations contained in the previous paragraphs are incorporated herein by reference and realleged as if set forth verbatim.

53.     At all times relevant, the Defendant Bombardier was in the business of designing, manufacturing, marketing, and otherwise distributing watercraft including the 2008 Sea-Doo watercraft at issue.

54.     The Defendant Bombardier expected the watercraft to reach the consuming public and users of the watercraft, including the minor, C.S.K., in the condition in which it was designed, tested, manufactured, and sold.

55.     The watercraft did reach the consuming public, including the owners of the watercraft and the minor, C.S.K., in the condition in which it was designed, tested, manufactured, and sold by Defendant Bombardier.

56.     The Sea-Doo watercraft at issue is defective because it poses an unreasonable danger to persons who fall or are ejected from the watercraft near the high-pressure jet stream of water coming from the rear of the watercraft, and does not have sufficient hand-holds, supports or passenger restraint devices.

57.     The Sea-Doo watercraft at issue is defective because, due to the design defects as complained of herein, it is foreseeable that passengers would fall from the watercraft while the watercraft was being used in a foreseeable and intended manner, and be struck by the high-pressure jet stream of water coming from the rear of the watercraft.

58.     The Defendant Bombardier should be held strictly liable in tort, as strict product liability is recognized under Tennessee law and as contemplated by the Restatement of Torts § 402(A)(B).  The Defendant Bombardier is strictly liable to Plaintiffs for designing, manufacturing, and placing into the stream of commerce the 2008 Sea-Doo watercraft at issue, which was unreasonably dangerous for its reasonable and foreseeable uses.  The said design and manufacturing defects, were a proximate and producing cause of the injuries suffered by the minor, C.S.K., and the other damages of the Plaintiffs as complained of herein.

59.     The watercraft in question was defectively marketed by the Defendant Bombardier because the Defendant failed to adequately warn of the dangers inherent in the Sea-Doo watercraft, knowing that the watercraft was dangerous to an extent beyond that which would be contemplated by an ordinary consumer.

60.     At the time it was placed in the stream of commerce, the 2008 Sea-Doo watercraft at issue was unreasonably dangerous in that it was dangerous to an extent beyond that which would be contemplated by the ordinary person who purchases, operates or rides as a passenger on it, with the ordinary knowledge common to the community as to its characteristics, including the minor, C.S.K.

61.     At the time it was placed in the stream of commerce, the Sea-Doo watercraft was unreasonably dangerous in that it would not be put on the market by a reasonably prudent manufacturer who knew of its defective and dangerous condition.

62.     The above referenced defects, set forth in strict liability form, were the cause in fact and the proximate cause of the incident described herein, and of the injuries suffered by the minor, C.S.K., and all other damages suffered by the Plaintiffs.

## VIII. BREACH OF EXPRESS AND IMPLIED WARRANTIES

63.     The allegations contained in the previous paragraphs are incorporated herein by reference and realleged as if set forth verbatim.

64.     The Defendant Bombardier warranted to the general public, including the minor, C.S.K., and the adult Plaintiffs, that the Sea-Doo watercraft at issue was fit for its intended purpose and use.

65.     The Defendant Bombardier is a merchant with respect to the 2008 Sea-Doo watercraft as defined in Tennessee Code Annotated 47-2-104(1).

66.     Implied in the contract for sale of the watercraft was an implied warranty of merchantability as defined in Tennessee Code Annotated § 47-2-314 that the watercraft was fit for the ordinary purposes for which it was used at the time of the injury complained of herein.

67.     The Defendant Bombardier made positive statements of fact and/or promises that the Sea-Doo watercraft at issue could provide for the safety for users, including the minor, C.S.K., in the conditions under which the watercraft was being operated at the time of the injuries complained of herein, which statements and promises created an express warranty as set forth in Tennessee Code Annotated § 47-2-313.

68.     The 2008 Sea-Doo watercraft failed to live up to Defendant Bombardier's representations while the watercraft was being used in a foreseeable manner and for the purposes for which it was designed and marketed.

69.     At the time of contracting for the sale of the vehicle, Defendant Bombardier had reason to know the particular purpose for the watercraft and manner in which it would be used.

70.     The Defendant Bombardier had reason to know that a buyer, operator or user of the Sea-Doo watercraft, such as the minor, C.S.K., relied on the skill and judgment of Defendant

Bombardier to select and furnish him or her with a watercraft fit for the particular purpose and manner for which the vehicle would be used.

71.     The Defendant Bombardier warranted that the watercraft was reasonably fit for the particular purpose for which the vehicle was required as set forth in Tennessee Code Annotated § 47-2-315.

72.     At the time of the injury complained of herein, the Sea-Doo watercraft was being used for the ordinary and particular purposes for which the vehicle was designed, tested, manufactured, marketed, distributed, and sold.

73.     At the time of the injury complained of herein, the Sea-Doo watercraft was being operated and used in a manner that was reasonably foreseeable to the Defendant Bombardier.

74.     The Defendant Bombardier breached its implied and expressed warranties, as set forth herein, resulting in an unreasonable risk of harm to operators or passengers, including the minor, C.S.K., and proximately causing the injuries complained of herein.

75.     The Defendant Bombardier owed a duty to the minor, C.S.K., to provide a vehicle which did not subject her to unreasonable risk of harm when used for the purpose and in a manner for which the vehicle was designed, manufactured, marketed, distributed, and sold.

76.     The minor, C.S.K., relied to her detriment upon the express and implied warranties and representations of the Defendant Bombardier that the 2008 Sea-Doo watercraft at issue was safe and fit for its intended purposes and uses.

77.     The Defendant Bombardier breached the warranties of merchantability and fitness for a particular purpose in that the Sea-Doo watercraft was not fit for ordinary use or for the intended use for which it was purchased.

78.     These breaches of warranties were the proximate cause of the injuries suffered by the minor, C.S.K., and all other damages of the Plaintiffs complained of herein.

## IX. DAMAGES

79.     As a direct and proximate result of the actions of the Defendant Bombardier as set forth above, the minor, C.S.K., suffered severe, painful, and mutilating injuries, physical disfigurement, physical discomfort, emotional distress, and will continue to suffer same in the future, along with medical care expenses incurred and expected to be incurred in the future, and other damages including pain and suffering sustained and expected to sustained in the future, loss of earning capacity, and loss of enjoyment of life sustained and reasonably certain to be sustained in the future, for which the Plaintiffs are entitled to recover from the Defendant any and all damages afforded by law.

80.     As a direct and proximate result of the actions of the Defendant Bombardier as set forth herein, the adult Plaintiffs, John A. King and Cathy D. King, have suffered damages including loss of consortium with their minor daughter and medical expenses incurred, and which will continued to be incurred in the future, for the care of their minor daughter, along with other damages, including emotional distress, lost wages, and loss of enjoyment of life, for all of which the Plaintiffs are entitled to recover from the Defendants.

## X. PUNITIVE DAMAGES

81.     The Defendant Bombardier owed a duty to the minor, C.S.K., and the adult Plaintiffs, as members of the consumer public and a foreseeable user of the Sea-Doo watercraft, to reasonably test the watercraft in question for design defects prior to placing the vehicle in question into the stream of interstate commerce, and to warn and/or recall said watercraft when the design defects as complained of herein became known.

82.     The Defendant Bombardier was guilty of reckless and conscious indifference to the consequences in designing, manufacturing, marketing, and distributing into the stream of commerce the defectively designed 2008 Sea-Doo watercraft without adequate testing, and adequate warnings for which punitive damages should be awarded.

83.     The Defendant Bombardier knew or ought to have known, in light of the

surrounding circumstances, that its conduct would naturally and probably result in injury and continued this conduct with malice or reckless disregard for the consequences of its actions for which punitive damages should be awarded, particularly because, upon information and belief, the Plaintiffs submit that Bombardier had actual knowledge prior to this incident, of prior incidents of the same nature causing severe injuries to other persons.

84.     The Defendant Bombardier breached the duty owed to members of the consuming public, including the minor, C.S.K., and the adult Plaintiffs, by failing to properly test the 2008 Sea-Doo watercraft prior to distributing the watercraft and placing it into the stream of interstate commerce, and in failing to warn and/or recall said watercraft when it knew of the design defects complained of herein.

85.     The Defendant Bombardier knew or ought to have known, in the light of the surrounding circumstances, that its failure to adequately test the watercraft, and its failure to warn and/or recall the watercraft, would naturally or probably result in injury, and Defendant Bombardier continued such conduct with malice or in reckless disregard of the consequences, from which malice may be inferred and for which punitive damages should be awarded.

86.     The failure of the Defendant Bombardier to adequately test for and/or correct the watercraft's unreasonably defective nature was wilful, wanton, and made with reckless disregard for the rights of the consumer public, including the minor, C.S.K.

87.     As a direct result of wilful, wanton and reckless actions of the Defendant Bombardier in failing to properly test the vehicle prior to distributing it and placing it into the stream of interstate commerce, and in failing to warn and/or recall said watercraft, the minor, C.S.K., suffered the injuries complained of herein.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS:

A.     That process issue and be served on the Defendants, directing them to appear and answer the Complaint;

B.     That upon the trial of this action, the jury award Plaintiffs a Judgment against the Defendants for compensatory damages in the amount of ten million dollars ($10,000,000.00) for the injuries suffered by the minor, C.S.K., and any and all other damages or injuries suffered by the Plaintiffs, and further to award punitive damages in an amount ten million dollars ($10,000,000.00);

C.     That the Plaintiffs have a jury trial; and

D.     Such other, further, general and specific relief to which they may be entitled.

_____

John T. Milburn Rogers (BPR#001422)
Counsel for Plaintiffs
ROGERS, LAUGHLIN, NUNNALLY,
HOOD & CRUM, P.C.
100 South Main Street
Greeneville, TN 37743
(423) 639-5183

_____

R. Wayne Culbertson (BPR#000765)
Counsel for Plaintiffs
119 W. Market Street
Kingsport, TN 37660
(423) 247-6161

_____

Jason R. McLellan (BPR#024596)
Counsel for Plaintiffs
158 Cherokee Street
Kingsport, TN 37660
(423) 245-3976

_____

Todd A. Shelton (BPR#023884)
Counsel for Plaintiffs
ROGERS, LAUGHLIN, NUNNALLY,
HOOD & CRUM, P.C.
100 South Main Street
Greeneville, TN 37743
(423) 639-5183

L:\PI\King v. Bombardier\Complaint2